**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CASS WILSON and DOUGLAS
KRUSCHEN, on behalf of themselves
and all others similarly situated,
*Plaintiffs-Appellants,*

v.

HEWLETT-PACKARD COMPANY,
*Defendants-Appellees.*

No. 10-16249

D.C. No.
5:09-cv-02253-
RMW

OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted
November 15, 2011—San Francisco, California

February 16, 2012

Before: Michael Daly Hawkins and Milan D. Smith, Jr.,
Circuit Judges, and Kevin Thomas Duffy, District Judge.*

Opinion by Judge Kevin Thomas Duffy

---

*The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

**COUNSEL**

James C. Shah (argued), Sheperd, Finkelman, Miller & Shah, Media, Pennsylvania, for the plaintiffs-appellants.

Theane Kapur (argued) and Samuel G. Liversidge, Gibson, Dunn & Crutcher, Los Angeles, California, for the defendant-appellee.

**OPINION**

DUFFY, District Judge:

Plaintiffs Cass Wilson and Douglas Kruschen ("Plaintiffs") appeal the dismissal of their second amended complaint alleging that Hewlett-Packard ("HP") concealed a design defect in its Pavilion Notebook computers (the "Laptops") that manifested after the expiration of the warranty and created an unreasonable safety hazard in violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* The District Court dismissed the second amended complaint, holding that Plaintiffs failed to plausibly allege a defect in the Laptops that created a safety hazard or that HP had any knowledge of the alleged defect. We find that the District Court did not err in requiring Plaintiffs to allege the existence of an unreasonable safety defect. We also find that the District Court did not err in holding that Plaintiffs failed to plausibly allege the existence of an unreasonable safety defect or HP's knowledge of a defect. Accordingly, we AFFIRM the judgment of the District Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Cass Wilson purchased an HP Pavilion Notebook computer in the summer of 2004 for approximately $1,500. In the fall of 2006, over two years after its purchase and shortly after the limited warranty expired, Wilson's Laptop began to display "low power" warnings and would run on battery power even when plugged into an a/c adapter. Wilson alleges that the problem became worse until he "was unable to utilize the Laptop at all." When Wilson contacted HP about his Laptop in or about December 2006, HP informed him that his warranty had expired on August 15, 2006, and that he could return the Laptop to HP and have his motherboard replaced for over $400, plus shipping and taxes.

Wilson then contacted a number of local repair facilities, which informed him that "there was a known problem with the power jack and the port for the power jack on a number of HP's computers." Instead of returning the Laptop to HP, Wilson opted to have the power jack repaired at a local repair facility for $150. The Laptop and its battery, however, were still unable to receive power.

In 2007, prior to commencing this action, Wilson became aware of the pendency of a class action lawsuit (the "PPGC class action") that purported to include his Laptop and which addressed the defect at issue. The lawsuit was ultimately settled, but Wilson's Laptop claim was not included in the settlement.

On January 5, 2009, Wilson filed a putative class action lawsuit against HP in California Superior Court, Santa Clara County, alleging that HP misrepresented and concealed a "common and uniform" design defect that causes HP's Pavilion dv, zd, ze, zt, zv and zx Notebooks' power jacks to fail at abnormally high rates and render the Laptops unusable, in breach of HP's express limited warranty and in violation of the UCL and CLRA. HP filed a demurrer to the initial com-

plaint, which the Superior Court sustained with leave to amend the CLRA and breach of warranty claims and overruled with respect to the UCL claim.

Subsequently, Wilson filed a first amended complaint stating the same claims and adding an allegation that HP's Pavilion dv, zd, ze, zt, zv and zx Notebooks "all are substantially likely to fail during their useful life." In May 2009, HP removed the action to the United States District Court for the Northern District of California. On September 17, 2009, the District Court granted HP's motion to dismiss with leave to amend and denied Wilson's motion to remand.

The complaint we consider here pled the UCL and CLRA claims and alleged that HP was aware, prior to the marketing and selling of the Laptops, that the Laptops were inherently defective and "substantially likely to cease working and require expensive repair during their useful life with normal use and after the expiration of the warranty accompanying the Laptops." The complaint further alleged that HP had a duty to disclose the defect to consumers, but misrepresented and concealed material information concerning the defect in its marketing, advertising, sale and servicing of the Laptops. In addition to the power connection problems stated in earlier versions of the complaint, the instant complaint also alleged that the design defect posed a safety risk as the extreme heat caused by the faulty power jack and port resulted in the Laptops' catching fire.

The second amended complaint also added Plaintiff Douglas Kruschen. Kruschen purchased his Laptop in 2004. In December 2008, after Kruschen plugged an a/c adapter into the Laptop and pressed the power button, his Laptop began emitting smoke, sparks and flames from the side of the computer near the power jack. Due to the flames, the Laptop became so hot that the power adapter welded itself to the Laptop, making it unusable. Kruschen sent his Laptop to HP for

inspection, but HP refused to fix the Laptop or compensate Kruschen, assertedly since no one was injured by the Laptop.

On January 15, 2010, the District Court granted HP's second motion to dismiss with leave to amend. The Court found that the complaint's allegations were insufficient to "plausibly allege a defect in the HP laptop computers that creates an unreasonable safety risk." Although the UCL and CLRA claims involve fraudulent intent, the District Court held that the complaint contains "few if any facts . . . from which an inference of knowledge of the allegedly hazardous defect could be drawn." While the pleading made reference to multiple anonymous consumer complaints, these complaints were either "undated or were made after the named plaintiffs had already purchased their laptops," and thus the allegations did not demonstrate that HP had any knowledge of the defect prior to the sale of the Laptops to Plaintiffs and the putative class.

Although Plaintiffs were granted leave to amend, they chose not to file a third amended complaint and requested instead that the District Court enter judgment. On May 28, 2010, Plaintiffs filed a notice of appeal.

## STANDARD OF REVIEW AND JURISDICTION

This Court reviews *de novo* a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff. *Id.* A complaint need not state "detailed factual allegations," but must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I.   The Unfair Competition Law

Under the UCL, any person or entity that has engaged, is engaging or threatens to engage "in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code §§ 17201, 17203. "Unfair competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The California Supreme Court has held that the UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citation omitted). The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Id.* (internal quotations and citation omitted). Further, the UCL creates "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Id.*

Plaintiffs allege that HP's omission violates the CLRA and California's common law fraud and deceit statutes. Cal. Civ. Code §§ 1572(3), 1709, 1710. While the complaint asserts a claim under the unlawful, unfair and fraudulent prongs of the UCL, Plaintiffs' opening brief only discusses the unlawful prong. Their allegations concerning the remaining prongs are thus waived, but we consider them for the sake of completeness. *See Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (holding that the court could not consider an issue that appellant failed to raise in his opening brief).

## II. The Consumers Legal Remedies Act

**[1]** The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (Ct. App. 2006) (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (Ct. App. 2003)). Specifically, Plaintiffs allege that HP violated the provisions of the CLRA that prohibit "[r]epresenting that goods or services have . . . characteristics . . . which they do not have," and "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another." Cal. Civ. Code § 1770(a)(5), (7).

## III. Duty to Disclose

In alleging that HP concealed a design defect, Plaintiffs contend that California law does not require that a concealed fact relate to a safety issue for liability to attach; rather, Plaintiffs cite to *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), in arguing that the concealed fact need only be "material."

California courts have generally rejected a broad obligation to disclose, adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (Ct. App. 2006). *Daugherty* held that a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* at 835; *see Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489, 493 (9th Cir. 2009) (discussing *Daugherty*). The *Daugherty* court found the plaintiff alleged

no facts establishing that the manufacturer was "bound to disclose," as the complaint did not allege "any instance of physical injury or any safety concerns posed by the defect." *Daugherty*, 144 Cal. App. 4th at 836. The court noted that the plaintiff merely alleged that the risk posed by the alleged defect was the cost to repair the product, which did not give rise to a duty to disclose. *Id.* Consequently, the court also rejected plaintiff's UCL claim, since absent a duty to disclose, the failure to disclose a defect "that might, or might not" shorten the useful life of a car that "functions precisely as warranted throughout the term of its express warranty" is not an unfair or fraudulent business practice under the UCL. *Id.* at 838-39.

**[2]** California federal courts have generally interpreted *Daugherty* as holding that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Oestreicher*, 322 F. App'x at 493; *see, e.g.*, *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG (CWx), 2011 U.S. Dist. LEXIS 85273, at *24-28 (C.D. Cal. July 29, 2011) (noting that, "[a]lthough California courts are split on this issue," the weight of authority suggests that the duty to disclose is limited to safety issues); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1095 (S.D. Cal. 2010) ("[A] manufacturer's duty to disclose under the CLRA is limited to safety-related issues."); *Morgan v. Harmonix Music Sys., Inc.*, No. C08-5211 BZ, 2009 U.S. Dist. LEXIS 57528, at *11-12 (N.D. Cal. July 7, 2009) ("According to all relevant case law, defendants are only under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use.").

Courts have also cited policy considerations to limit the duty to disclose, noting that to broaden the duty to disclose beyond safety concerns "would eliminate term limits on warranties, effectively making them perpetual or at least for the

'useful life' of the product." *Oestreicher*, 544 F. Supp. 2d at 972. Under a contrary rule, as the Court of Appeal noted in *Daugherty*, the "[f]ailure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." 144 Cal. App. 4th at 829.

Plaintiffs maintain that *Falk* supports a CLRA claim where a manufacturer conceals a material fact independent of safety concerns.[1] *See also Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 U.S. Dist. LEXIS 125139, at *9 (C.D. Cal. June 12, 2009) (holding that plaintiffs plausibly alleged CLRA and UCL claims based on materiality without discussing safety concerns); *Bristow v. Lycoming Engines*, No. CIV. S-06-1947 LKK GGH, 2007 U.S. Dist. LEXIS 31350, at *21-22 (E.D. Cal. Apr. 10, 2007).[2] Courts have held that, while *Falk* applied the correct standard to judge materiality, safety considerations were "integral to the [*Falk*] court's finding that the non-disclosed information was material." *Oestreicher*, 544 F. Supp. 2d at 971; *see O'Shea*, 2011 U.S. Dist. LEXIS 85273, at *24 (holding that *Falk* was distinguishable since there, the omitted fact involved a safety concern).

---

[1]Plaintiffs also cite extensively to *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) (holding that omitted information about a defect in washing machines that caused consumers to pay large repair bills was material under CLRA). *Tietsworth*, however, is distinguishable "because the plaintiffs in that case alleged that they began experiencing problems 'within the first months of purchasing the Machine'—*i.e.*, *within* the express warranty period." *In re Sony HDTV*, 758 F. Supp. 2d at 1096 n.8 (discussing *Tietsworth*).

[2]The defects in *Cirulli* and *Bristow*, however, arguably concerned safety issues. In *Cirulli*, the defect was a "defective drain-hole design" that led to excessive corrosion to the vehicle's sub-frame, causing plaintiff to lose control of the vehicle. 2009 U.S. Dist. LEXIS 125139, at *3. The *Bristow* court only discussed repair costs and diminution of value, but noted that failed airplane crankshafts could cause "power loss, engine failure, and damage to the airplane." 2007 U.S. Dist. LEXIS 31350, at *2.

In *Falk*, plaintiffs brought CLRA and UCL claims, alleging their vehicles' speedometers ceased to function properly after the expiration of the vehicle's warranty. The court stated that a failure to disclose can constitute actionable fraud under the CLRA in four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk*, 496 F. Supp. 2d at 1095 (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). In order for the concealed fact to be "material," plaintiffs had to show that " 'had the omitted information been disclosed, one would have been aware of it and behaved differently.' " *Id.* (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). The court then held that a defective speedometer would be material to a reasonable consumer, since a defective speedometer could lead to "traveling at unsafe speeds and moving violation penalties." *Id.* at 1096. The court further held that "plaintiffs successfully allege[d] that the potential for failed speedometers constitute[d] a safety hazard." *Id.* at 1096 n.*.

**[3]** Even if this Court applies the factors from *Falk* regarding materiality, as Plaintiffs suggest, "for the omission to be material, the failure must [still] pose 'safety concerns.' " *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010); *see In re Sony HDTV*, 758 F. Supp. 2d at 1096 ("[I]n the context of the CLRA, materiality is also linked to safety considerations. Because the defect [p]laintiffs allege in this case had no impact on the safe use of the televisions, information about it was immaterial for the purpose of stating a CLRA claim." (citation omitted)).

The remaining cases Plaintiffs cite to support their argument that a fact need only be material to trigger a duty to disclose are distinguishable from the present case. In *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007),

the plaintiff alleged that HP's printers indicated that printer cartridges were empty when, in fact, they still contained ink; the plaintiff did not allege that the printers contained a latent defect but that HP had represented that the cartridges were empty. *Id.* at 1268; *see Morgan*, 2009 U.S. Dist. LEXIS 57528, at *18 n.8 (discussing *Baggett*). Second, in *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 U.S. Dist. LEXIS 59747 (N.D. Cal. June 16, 2010), the defect manifested during the express warranty period, and is thus distinguishable from the present case. *Id.* at *9-10; *see O'Shea*, 2011 U.S. Dist. LEXIS 85273, at *24 n.7 (noting *Baba* is distinguishable from *Daugherty*). Several other cases concern services rather than manufactured products. *See, e.g.*, *In re Mediscan Research, Ltd.*, 940 F.2d 558 (9th Cir. 1991) (holding that appellant had a duty to disclose that the terms of the offering of limited partnership shares had been modified); *Stickrath v. Globalstar, Inc.*, No. C07-1941 THE, 2008 U.S. Dist. LEXIS 12190 (N.D. Cal. Feb. 6, 2008) (holding that plaintiffs successfully alleged concealment of a defect in defendant's satellite telephone service); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (Ct. App. 2001) (finding that plaintiff stated a fraudulent concealment claim based on AT&T's appropriation of plaintiff 's 1-800 number).

**[4]** Thus, as Plaintiffs allege that HP concealed the design defect in the Laptops, the District Court did not err in requiring Plaintiffs to allege that the design defect caused an unreasonable safety hazard.

## IV. The Existence of an Unreasonable Safety Defect

The District Court correctly dismissed the complaint, as Plaintiffs have not sufficiently alleged a causal connection between the alleged design defect and the alleged safety hazard.

### A. The Alleged Design Defect

The second amended complaint describes the design defect in some detail. First, it states that the component that connects

the power jack to the motherboard "was designed in a manner that is exceedingly fragile," as the connection is supported only by a few pins affixed with solder. Thus, plugging an a/c adapter into the power jack will weaken the power jack's connection to the motherboard until the power jack can no longer deliver power to the Laptops. Additionally, the complaint states that the repeated heating and cooling that occurs when the Laptops are switched on and off weakens the solder connections causing the failure of the connection between the power jack and the computer.

### B.  The Alleged Safety Hazard

The second amended complaint states that the Laptops contain "a serious design defect that causes the power jacks . . . [to] expose owners and users to a safety hazard as a result of severe overheating often resulting in the Laptops [sic] catching on fire." In addition to Kruschen's experience with his laptop, the complaint also contains several customer complaints concerning the Laptops' overheating problem, such as:

- The power connection jack shorted out, caught the motherboard on fire and melted into a useless clump of junk . . . .

- AC adapter failed and caught fire.

- The ac power adapter has caught fire . . . .

- At the time when the power jack completely failed, smoke began to flow rapidly from inside the computer.

### C.  The Causal Connection Between the Alleged Defect and the Alleged Safety Hazard

[5] Plaintiffs have not alleged a sufficient nexus between the alleged design defect and the alleged safety hazard. In

*Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009), plaintiffs asserted that Sears' washing machines contained a defect in their Electronic Control Boards that caused the machines to stop mid-cycle and display a variety of error codes. In their complaint, plaintiffs also alleged that the defective control boards led to the machines' spinning out of control and exploding. *Id.* at *14-15. The court found that there was "no obvious nexus . . . between this allegation and the specific defect in the Electronic Control Board asserted continuously throughout the [complaint]."[3] *Id.* at *15.

**[6]** In the case at bar, the complaint goes into some detail as to how normal use of the Laptops (*i.e.*, turning them on and off, plugging in an a/c adapter) causes the connection between the power jack and the motherboard to weaken, resulting in a loss of power to the Laptops. The complaint, however, does not allege how the weakening or loss of the connection between the power jack and the motherboard causes the Laptops to ignite. *See Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *3 (N.D. Cal. May 31, 2011) (dismissing plaintiff's strict liability and negligence claims under *Iqbal* where plaintiff did "not allege facts indicating how the [design defect] has caused her harm"). The complaint merely states that when Kruschen plugged in his computer and turned it on, the Laptop emitted "heavy smoke, flames, and sparks from the left side of the Laptop (close to the power jack)." The complaint is silent on whether the power jack's becoming disconnected in any way led to Kruschen's Laptop's catching fire. Some of the customer complaints do minimally allege such a causal connection, such as "[a]t the time when the power jack completely failed, smoke began to flow rapidly from inside the computer." These statements, however, are not accompanied by any supporting factual basis.

---

[3]The *Tietsworth* court concluded that neither plaintiffs nor any putative class members offered any factual allegations that they actually experienced a machine's spinning out of control, and thus, lacked standing to pursue the claim. 2009 U.S. Dist. LEXIS 98532, at *15.

Plaintiffs simultaneously allege that the design defect cuts off power from the Laptops and that the Laptops can ignite into flames through normal use. But it is difficult to conceive (and the complaint does not explain) how the Laptops could ignite if they are "unable to receive an electrical charge."[4] *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011) (holding that dismissal is appropriate where plaintiffs' allegations about the alleged defect are implausible). The present case is therefore distinguishable from those cases surviving a motion to dismiss where the alleged design defect could conceivably lead to a safety hazard. *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) (holding that vehicle's water-leak defect could cause sudden and unexpected engine failure and result in personal injury or death); *Marsikian v. Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 U.S. Dist. LEXIS 117012, at *16-17 (C.D. Cal. May 4, 2009) (denying motion to dismiss a CLRA claim where plaintiff alleged that air intake systems were "susceptible to clogging" and the defect could lead to "substantial electrical failure" because "it is not implausible that the [clogging] would cause 'catastrophic engine and electrical system failure' while the car is on the road").

[7] As Plaintiffs do not plead any facts indicating how the alleged design defect, *i.e.*, the loss of the connection between

---

[4]Although not raised in the second amended complaint, Plaintiffs argue in their reply brief that the connection between the power jack and the motherboard weakens over time before becoming completely disconnected. Plaintiffs explain that power continues to reach the motherboard through a weakened connection, "which can lead to electrical sparking, increased heat, and flames." While Plaintiffs state that the result of the weakened connection is "obvious," it is not clear that this is a reasonable inference to draw from the alleged defect. *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

the power jack and the motherboard, causes the Laptops to burst into flames, the District Court did not err in finding that Plaintiffs failed to plausibly allege the existence of an unreasonable safety defect.

## V.   HP's Knowledge of a Defect

**[8]** Plaintiffs must allege HP's knowledge of a defect to succeed on their claims of deceptive practices and fraud. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction *intended to result or which results in the sale or lease of goods or services* to any consumer." Cal. Civ. Code § 1770(a) (emphasis added). Consequently, California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss. *See In re Sony HDTV*, 758 F. Supp. 2d at 1095 ("Sony had no duty to disclose facts of which it was unaware."); *Kent v. Hewlett-Packard Co.*, No. 09-5341 JF (PVT), 2010 U.S. Dist. LEXIS 76818, at *29 (N.D. Cal. July 6, 2010) ("Plaintiffs have not alleged with specificity any other facts that could support a claim that HP knew the computers in suit were defective at the time of sale or that HP actively concealed a defect at the time of sale.").

**[9]** Plaintiffs' UCL claim also requires that they allege HP's knowledge of a defect. An action under the UCL's unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."**[5]** *Cel-Tech Commc'ns, Inc.*,

---

[5]As noted above, although the second amended complaint asserts a UCL claim under the unlawful, unfair and fraudulent prongs of the UCL, Plaintiffs' opening brief only discusses the unlawful prong. Regardless of whether or not Plaintiffs waived the portion of their UCL claim concerning the unfair and fraudulent prongs, the failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.*, a defect of which it is not aware, does not constitute an unfair or fraudulent practice. *See Daugherty*, 144 Cal. App. 4th at 838-39; *see also In re Sony HDTV*, 758 F. Supp. 2d at 1095.

20 Cal. 4th at 180 (internal quotations and citation omitted). The second amended complaint states that HP's omission amounts to violations of the CLRA and California's common law fraud and deceit statutes, Cal. Civ. Code §§ 1572(3), 1709, 1710, and are unlawful practices that are independently actionable under the UCL. As both the fraud and deceit statutes have an intent requirement, Plaintiffs must show that HP was aware of the alleged defect at the time the Laptops were sold.[6]

Plaintiffs allege that HP has been aware of the Laptops' defect since 2002. The complaint states that "[s]ince the Laptops suffer from an inadequate Design for Reliability, HP also has been on notice, since the time it began manufacturing and selling these Laptops that these computers were seriously defective and hazardous." According to Plaintiffs, HP was also aware of the defect because it had "access to the aggregate information and data regarding the risk of overheating" and there had been another lawsuit involving the same defect on a different model of laptop computers. Plaintiffs also submitted several customer complaints to support their allegation that HP had knowledge of the defect.

Plaintiffs further claim that the PPGC class action should have alerted HP to the defect. It is unclear, however, how this class action should have made HP aware that the defect posed a safety hazard. The complaint states that "very little substantive discovery" took place in the class action, and the settlement did not include Wilson's Laptop claim. Further, the complaint notes that all the computers involved in the class action suffered from the "same common defect," but never

---

[6]Under Cal. Civ. Code § 1572(3), actual fraud includes the "suppression of that which is true, by one having knowledge or belief of the fact," and who is a party to a contract acting "with intent to deceive another party" to enter the contract or to induce another to enter a contract. Similarly, one commits fraudulent deceit "who willfully deceives another with intent to induce him to alter his position to his injury or risk." Cal. Civ. Code § 1709.

specifies the defect or alleges that any of these computers were prone to overheating or bursting into flames.

Typically, plaintiffs who successfully allege that a manufacturer was aware of a defect present a stronger factual basis for their claims than Plaintiffs have here. In *Cirulli*, the court held that the plaintiff had sufficiently pled Hyundai was aware that its vehicles were unusually vulnerable to premature oxidation and corrosion, and consequently structural deterioration, where plaintiff alleged, among other things: "Since 1999, [Defendant] has . . . constantly tracked the National Highway Traffic Safety Administration . . . database to track reports of defective Sonata sub-frames. From this source, [Defendant] knew that its 1999-2004 Sonatas were experiencing unusually high levels of sub-frame deterioration, steering control arm separation, steering loss, and highway accidents . . . ." 2009 U.S. Dist. LEXIS 125139 at *9-10. Similarly, in *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011), the plaintiff successfully alleged that HP was aware of a defect that caused its printers to randomly skip pages when copying, scanning and faxing by alleging: (i) HP advertised that it adheres to "the recognized ISO/IEC 24734 and 24735 standards," which require multiple tests using repeated scanning of a multi-page document; and (ii) there were customer complaints concerning the defect three months before the plaintiff purchased his printer. *Id.* at *12-13.

[10] By comparison, in the case at bar, Plaintiffs' allegations that HP "became familiar with" and was "on notice" of the defect plaguing the Laptops at the time of manufacture and as early as 2002, seem merely conclusory. Plaintiffs make a generalized assertion that the Laptops' alleged "inadequate Design for Reliability" put HP on notice that the Laptops "were and are seriously defective," but reference neither the specific defect alleged in the complaint nor HP's knowledge of that defect. The allegation that HP, as the manufacturer, had "access to the aggregate information and data regarding

the risk of overheating" is speculative and does not suggest how any tests or information could have alerted HP to the defect. *See Tietsworth*, 2009 U.S. Dist. LEXIS 98532, at *13 (holding as conclusory the allegation that defendants were in a "superior position to know the truth about the [product]"); *Oestreicher*, 544 F. Supp. 2d at 974 (holding allegation that defendant had "exclusive knowledge as the manufacturer" did not support claim that defendant was aware of a defect). By contrast, the plaintiffs in *Falk* alleged that "[o]nly GM had access to the aggregate data from its dealers[,] only GM had access to pre-release testing data[, and] only GM had access to the numerous complaints from its customers." These facts led the court to conclude that plaintiffs sufficiently "state[d] a claim that GM had exclusive knowledge of the alleged defect in their speedometers." 496 F. Supp. 2d at 1096 (internal quotations omitted).

Plaintiffs rely on *Falk* and distinguish *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, (N.D. Cal. 2010), *vacated in part by* 771 F. Supp. 2d 1156 (N.D. Cal. 2011), in asserting that customer complaints can impute knowledge on a defendant. *See Falk*, 496 F. Supp. 2d at 1096; *Kowalsky,* 771 F. Supp. 2d at 1145 ("[I]n some cases, allegations of consumer complaints posted on a defendant's own customer support website may be sufficient to raise a reasonable inference that the defendant knew of a product defect . . . . [I]t is reasonable to infer that a company monitors the complaints it receives on its website."). The *Falk* court, however, considered "the amassed weight of [customer] complaints" together with other indications that GM had knowledge of the defect. 496 F. Supp. 2d at 1096-97.

**[11]** Some courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect, noting that complaints posted on a manufacturer's webpage "merely establish the fact that some consumers were complaining. By themselves they are insufficient to show that [the manufacturer]

had knowledge [of the defect]." *Berenblat v. Apple, Inc.*, Nos. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010); *see Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 U.S. Dist. LEXIS 8527, at *9-10 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect.").

Furthermore, courts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*. *Baba*, 2010 U.S. Dist. LEXIS 59747, at *14 (finding that none of the consumer complaints "include[d] any dates, and therefore shed no light on when HP knew of the alleged defects");[7] *see Oestreicher*, 544 F. Supp. 2d at 974 n.9 ("Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants. There are no allegations that Alienware knew of the customer complaints at the time plaintiff bought his computer.").

**[12]** Here, Plaintiffs have submitted fourteen customer complaints, but the second amended complaint does not indicate where or how the complaints were made (*e.g.*, via HP's website). Twelve of those complaints are undated. The two complaints that are dated were made over two years after Plaintiffs purchased the Laptops. Thus, as the District Court concluded, the complaints do not support an inference that HP

---

[7]Plaintiff argues that the present case is distinguishable from *Baba*, since in *Baba* the court found that the complaint failed because there were "no averments that HP knew of the alleged defects at the time it sold the computers." *Baba*, 2010 U.S. Dist. LEXIS 59747, at *14. The court noted, however, that instead of averring that HP was aware of the defect, the complaint stated that "HP is aware of the defect due to the numerous complaints it has received . . . ." *Id.* at *14-15. The court then concluded that the undated complaints did not indicate that HP was aware of the defect at the time of the sale. *Id.* at *15.

was aware of the defect at the time it sold the Laptops to Plaintiffs.[8]

[13] The District Court therefore did not err in holding that the second amended complaint did not sufficiently allege that HP knew of the alleged defect at the time of sale.

## CONCLUSION

For all of the above reasons, the judgment of the district court is affirmed.

**AFFIRMED.**

---

[8]Plaintiffs assert that the court in *Falk* relied on consumer complaints made after some of the plaintiffs had purchased their vehicles. In doing so, Plaintiffs state that the *Falk* consumer complaints were dated from 2003 to 2007 for vehicles purchased in 2003 and 2004. The *Falk* court, however, held that the consumer complaints dated from 2003 to 2007 for vehicles purchased between 2003 to 2007 were sufficient to survive a motion to dismiss. 496 F. Supp. 2d at 1096.