**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

OCT 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| AJA GORSLINE, | No. 23-15853 |
| Plaintiff-Appellee, | D.C. No.<br>3:21-cv-00019-ART-CLB |
| v. | |
| TYLER RANDALL, | MEMORANDUM[*] |
| Defendant-Appellant, | |
| and | |
| CHARLES DANIELS, Director of the Nevada Department of Corrections; BRIAN WILLIAMS, Warden, Deputy Director of Operations; TIM GARRETT, Acting Warden and Associate Warden of the Lovelock Correctional Center; KIRK WIDMAR, Acting Associate Warden and Correctional Lieutenant of the LCC; BOBBY K. PRESTON, Correctional Lieutenant of the LCC; JASON C. CHASON, Shift Commander of the LCC; JOHN AND JANE DOES, 1-40, | |
| Defendants. | |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted May 14, 2024
San Francisco, California

Before: CALLAHAN and SANCHEZ, Circuit Judges, and KRONSTADT,[**] District Judge.
Dissent by Judge CALLAHAN.

This appeal arises from an assault of Plaintiff-Appellee Aja Gorsline at Lovelock Correctional Center ("LCC") by inmate Toyanell Kuykendall. The operative complaint alleges that Nevada correctional officers violated Gorsline's Due Process rights under 42 U.S.C. § 1983 and the "state-created danger" doctrine. The Attorney General for the State of Nevada moved to dismiss Gorsline's complaint on behalf of all defendants, and the district court granted the motion as to all except Tyler Randall. Randall timely appealed.

We have jurisdiction under the collateral order doctrine to review the district court's rejection of Randall's qualified immunity defense at the motion to dismiss stage, and we review such a denial de novo. *See Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009)). We reverse.

A state actor may be held liable under the state-created danger doctrine if they (1) commit "affirmative conduct" that created a "particularized danger" for

---

[**] The Honorable John A. Kronstadt, United States District Judge for the Central District of California, sitting by designation.

the plaintiff that she "would not otherwise have faced," and (2) act with "deliberate indifference" to that "known or obvious danger." *Polanco*, 76 F.4th at 926 (first quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011); and then quoting *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)); *see Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023), *cert. denied sub nom. Tulare v. Murguia*, 144 S. Ct. 553 (2024). Deliberate indifference "is a subjective standard that requires a plaintiff to allege facts supporting an inference that the official recognized an unreasonable risk and actually intended to expose the plaintiff to such risk." *Polanco*, 76 F.4th at 928 (citation omitted). Deliberate indifference is a "stringent standard of fault," requiring proof that a state actor "disregarded a known or obvious consequence of his action." *Murguia*, 61 F.4th at 1111 (internal quotation marks and citation omitted). This standard is higher than gross negligence and requires a culpable mental state. *Id.*

Here, Gorsline's theory of deliberate indifference is premised on the notion that Randall abandoned his post and thereby left her alone, stranded, and completely unprotected against the risk of violence, including sexual assault, in a particularly dangerous place. But the operative complaint fails to allege facts indicating that Randall was aware that leaving his post would expose Gorsline to a particularized risk of harm. For example, there are no allegations as to whether Randall knew he was leaving Gorsline alone without protection in Unit 2B, and the

3

complaint is silent about Randall's awareness of any deficiencies in LCC's staffing or security protocols or risks posed by the inmate population housed in Unit 2B. At bottom, even taking all allegations in the complaint as true and construing them in the light most favorable to Gorsline, a reasonable juror could not conclude that Randall "recognized an unreasonable risk and actually intended to expose the plaintiff to such risk." *Polanco*, 76 F.4th at 928 (citation omitted). We conclude that Gorsline has not adequately alleged deliberate indifference, and we reverse.

Because Gorsline could theoretically remedy the deficiencies we have identified by further amendment of the operative complaint, we direct the district court to grant Gorsline leave to amend her claim against Randall. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." (internal quotation marks and citation omitted)); *see also Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016) (granting appellant leave to amend § 1983 claim where the operative complaint could be construed to encompass plausible theories of liability); *Broam v. Bogan*, 320 F.3d 1023, 1034 (9th Cir. 2003) (same). Further amendment would not be futile. The second amended complaint was the first to name Randall as a defendant, along with several other defendants who have since been dismissed from this action. As discussed, the second amended complaint's

4

conclusory allegations of Randall's state of mind and conduct do not adequately allege deliberate indifference. A third amended complaint could seek to address these shortcomings.

Should Gorsline seek to amend and file a third amended complaint, Randall may correspondingly bring another Rule 12(b)(6) motion to dismiss. In his motion, Randall may again argue that Gorsline has failed to state a claim under the state-created danger doctrine or that he is entitled to qualified immunity as a matter of law.

The district court's order is **REVERSED** and **VACATED.**



CALLAHAN, Circuit Judge, dissenting:

The majority understates the infirmities of Aja Gorsline's operative complaint. While I agree with the decision to reverse and vacate the district court's order, the majority goes astray in granting leave to amend. Even if given the opportunity to file a third amended complaint, Gorsline cannot plead a constitutional violation under the Due Process Clause and officer Tyler Randall is entitled to qualified immunity. Because further amendment would be futile, and because I would grant qualified immunity, I dissent.

## I.      Gorsline cannot allege that Randall violated her constitutional right.

The state-created danger requires Gorsline to allege that Randall's "affirmative actions created or exposed her to an actual, particularized danger that she would not otherwise have faced," *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019), and that Randall acted with "deliberate indifference," meaning that Randall "recognized an unreasonable risk and actually intended to expose [her] to such risk." *Polanco v. Diaz*, 76 F.4th 918, 928 (9th Cir. 2023). Even if granted leave to file a third amended complaint, Gorsline cannot allege facts to satisfy either of these requirements.

### A.      *Affirmative Act*

Critical to the state-created danger doctrine is that the official "must have taken <u>actions</u> that placed the plaintiff in a worse position that he would have been

-1-

in had the state not acted at all." *Polanco*, 76 F.4th at 926 (emphasis added); *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) ("The critical distinction is . . . one between state action and inaction in placing an individual at risk."). Perhaps the most fundamental flaw with Gorsline's operative complaint is that she does not, and indeed cannot, allege that Randall took an "affirmative act" to place her in danger at Lovelock Correctional Center (LCC).

The inmate attack at issue occurred because Randall allegedly "was not at his post, and so did not carry out [sic] his assigned duties and responsibilities." Randall was not at his post because he was "in the restroom." Gorsline frames this as Randall "abandoning his post," and alleges that "[b]y abandoning his post, Defendant Randall created a known and obvious risk of harm to [Gorsline] and all other LCC employees."

But "not carry[ing] out his assigned duties and responsibilities" are omissions by Randall, not actions. And when analyzing claims under the state-created danger doctrine, we "consider whether the conduct at issue was an affirmative act or an omission." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062 n.2 (9th Cir. 2006). Here, Randall failed to carry out his duties, and it was this "failure to do something" that created a vacuum for the inmate to attack Gorsline. *See Omission*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("A failure to do something; esp., a neglect of duty"). Holding that this omission could

constitute "state action" would collapse the state-created danger doctrine into tort law. *See* Restatement (Second) of Torts § 6 (Am. L. Inst. 1965) ("The word 'tortious' is used . . . to denote the fact that conduct <u>whether of act or omission</u> is of such a character as to subject the actor to liability") (emphasis added); *id.* at § 282 cmt. a ("Negligent conduct may consist <u>either of an act, or an omission to act</u> . . .") (emphasis added).

Even if going to the restroom could be considered an "affirmative act," the district court recognized that the gravamen of Gorsline's complaint is that Randall went to the restroom "without ensuring another LCC employee was present to cover his position." Stated differently, Randall going to the restroom did not expose Gorsline to danger; it was his alleged failure to ensure "another LCC employee was present to cover his position" that allowed the inmate to attack Gorsline. The alleged failure to "carry out his assigned duties and responsibilities" is an omission that is insufficient to create liability under the state-created danger doctrine, and the district court erred in concluding otherwise.[1]

Curiously, the district court held that Gorsline failed to allege an "affirmative act" for one of Randall's co-defendants because the defendant's alleged "failures to act, or failures to comply with policy" were "fundamentally omissions." With

---

[1]    Counsel for Gorsline conceded as much at oral argument, explaining that Randall created a dangerous situation for Gorsline because "he didn't do anything to make sure he was covered when he went to the bathroom."

respect to that co-defendant, the district court correctly concluded that the alleged "failure to follow NDOC's relevant policies and procedures cannot create liability under the state-created danger exception." It is unclear why the district court did not reach the same conclusion for Randall. *See Murguia v. Langdon*, 61 F.4th 1096, 1108 n.9 (9th Cir. 2023).

Because Randall's alleged conduct was an omission, and not an "affirmative act," he cannot be held liable under the state-created danger doctrine. The majority avoids this foregone conclusion by focusing on Gorsline's "deliberate indifference" allegations, but the complaint as a whole fails because it was Randall's omissions—and not his actions—that placed Gorsline in danger. *Hooper v. Shinn*, 985 F.3d 594, 622 (9th Cir. 2021) (amendment is futile when claim "is not viable on the merits").

## B.    *Deliberate Indifference*

I agree with the majority's conclusion that Gorsline failed to allege Randall's deliberate indifference. I depart from the majority because I do not believe these failures can be saved by amendment.

As the majority notes, deliberate indifference requires allegations that Randall "disregarded a known or obvious consequence of his action." I do not see how Gorsline can allege that Randall "disregarded" the possibility of an inmate attack. The attack happened because Randall went to the restroom without

ensuring appropriate coverage. For a daily activity like going to the restroom either Randall usually told someone that he was leaving or, if he forgot, nothing untoward happened at all. The more "reasonable inference," then, is that Randall simply made a mistake on the day of the attack, and not that he "disregarded" the possibility of an inmate attack. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Again, while such a mistake may well constitute a tort, *see* Restatement (Second) of Torts § 298, "the claim here is based on the Due Process Clause of the Fourteenth Amendment, which, as [the Supreme Court has] said many times, does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 202 (1989); *see also Butz v. Economou*, 438 U.S. 478, 507 (1978) ("Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

Amendment is also futile because Gorsline alleges that Randall "came out of the restroom when he heard [her] yelling for help," and "sounded a separate alarm to call for help." We have held that attempts to "mitigate" a dangerous situation shows that the defendant did not have the requisite culpable mental state for the state-created danger doctrine. *Polanco*, 76 F.4th at 928. For example, in *Patel v. Kent School District*, we found it significant that the defendant "rushed out of her classroom to prevent a possible incident," explaining that it would be "a different

-5-

case if [the defendant] . . . stood idly by."  648 F.3d 965, 975 (9th Cir. 2011).  On the other end of the scale, we found it relevant in *Hernandez v. City of San Jose* that the officers "did nothing" after leading plaintiffs into a dangerous situation. 897 F.3d 1125, 1130 (9th Cir. 2018).  Here, unlike the defendants in *Hernandez* who "did nothing," and like the defendant in *Patel* who "rushed out" to help, Randall attempted to mitigate the risks that materialized after he went to the restroom without ensuring appropriate coverage.  These allegations thus establish that Randall did not act with deliberate indifference, and I doubt that Gorsline has a good faith basis to remove these allegations in her third amended complaint.

## II.   Gorsline cannot allege that the unlawfulness of Randall's conduct was "clearly established."

Even if we assume Gorsline can plausibly allege that Randall violated her constitutional right, she still cannot allege that the unlawfulness of Randall's conduct was "clearly established," which requires that existing precedent place the unlawfulness of the officer's conduct "beyond debate."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  The district court held that *L.W. v. Grubbs* (*Grubbs I*), 974 F.2d 119 (9th Cir. 1992), placed the unlawfulness of Randall's conduct "beyond debate."  That was wrong.

In *Grubbs I*, a registered nurse (L.W.) was employed at a medium security prison, and her supervisors "led her to believe that she would not be required to work alone with violent sex offenders."  974 F.2d at 120.  L.W.'s supervisors then

-6-

"knowingly assigned" a violent inmate, David Blehm, to work with her alone. *Id.* at 120–21. The supervisors did so despite knowing that Blehm "was likely to assault a female if let alone with her," that "L.W. would be alone with Blehm during her rounds," and that "L.W. would not be prepared to defend against or take steps to avert an attack." *Id.* at 120–21. *Id.* When alone with L.W., Blehm assaulted, battered, kidnapped, and raped her. *Id.*

With respect to the first requirement under the state-created danger doctrine, the officers in *Grubbs I* created a dangerous situation through "their <u>acts</u> that independently created the opportunity for and facilitated Blehm's assault." 974 F.2d at 121 (emphasis added). They "assigned" a violent inmate to work with L.W. Here, there were no "acts" by Randall "that independently created the opportunity" for the inmate to attack Gorsline. *Id.* Again, going to the restroom did not independently create the dangerous situation; it was Randall's failure to "carry out his assigned duties and responsibilities" of ensuring coverage (i.e., an omission) that created the danger. *Grubbs I* therefore does not place the unlawfulness of Randall's conduct (if it was unlawful at all) "beyond debate."

With respect to the second requirement under the state-created danger doctrine, the officers in *Grubbs I* "knew that Blehm was a violent sex offender who had failed all treatment and was likely to assault a woman if alone with her, and that, even knowing this, Defendants intentionally assigned Blehm to work alone

with L.W. in the clinic. 974 F.2d at 123. The "likely" consequence of the officers' conduct, then, was an attack on L.W. Here, the consequence of an inmate attacking Gorsline because Randall went to the restroom without ensuring coverage was not so "likely." Unlike the supervisors in *Grubbs I* who "led [L.W.] to believe that she would not be required to work alone with violent sex offenders," *id.* at 120, inmates at LCC were allowed to be alone with Gorsline, even if officers were otherwise around to protect her. Further, Gorsline's complaint explains how the inmate who attacked her "should not have been housed at LCC or any other medium security facility" because he was a "violent sexual offender," but that another defendant approved placing the inmate at LCC nonetheless. Unlike the officers in *Grubbs I* who "knew that Blehm was a violent sex offender," 974 F.2d at 123, the more "reasonable inference" is that Randall would have had no reason to believe a violent sex offender was at LCC. *Hewlett-Packard Co.*, 668 F.3d at 1140.

The majority makes passing reference to Randall's right to argue qualified immunity after Gorsline files her third amended complaint. But because Randall's "acts" did not "independently create[] the opportunity for and facilitated" the inmate attack, *Grubbs I*, 924 F.2d at 122, and because an inmate attack on Gorsline was not an "obvious consequence" of Randall's conduct, our precedent simply did

not place the unlawfulness of Randall's conduct "beyond debate."[2]  A third amended complaint cannot save this inevitable result.  Randall is entitled to qualified immunity.

* * *

"The facts here, as in many state-created danger cases, are deeply troubling," but the Due Process Clause was intended to prevent abuses of coercive state authority, "not torts that happen to be committed by State actors."  *Murguia v. Langdon*, 73 F.4th 1103, 1104 (9th Cir. 2023) (Bumatay, J., joined by Callahan, Ikuta, and R. Nelson, J.J., dissenting from the denial of rehearing en banc).  In finding that amendment would be futile I do not in any way suggest that Gorsline cannot bring a cause of action against Randall or any of his co-defendants.  Her claim, though, is not properly brought under the federal Due Process Clause.  The State of Nevada provides relief to plaintiffs like Gorsline who allege injuries

---

[2]  Although the district court relied only on *Grubbs I*, Gorsline raised at oral argument that *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), also places the unlawfulness of Randall's conduct "beyond debate."  *See Polanco*, 76 F.4th at 930 n.8 ("We routinely rely on the intersection of multiple cases when holding that a constitutional right has been clearly established.").  *Wood* is distinguishable in the same way as *Grubb*s *I*.  The officer in *Wood* <u>acted</u> when he "removed the keys from the car" in which the victim was a passenger and "called for a tow truck to have the car impounded."  879 F.2d at 586.  But-for these actions, the victim could have made it home safely.  And the officer in *Wood* actually spoke with the victim, who asked the officer "how she would get home" from the "high-crime area" to which the officer "replied that he was sorry, but that [she] would have to get out of the car."  *Id.*

caused by the tortious conduct of State officials, *see* Nev. Rev. Stat. § 41.031 (2023), and Gorsline may very well have an actionable claim for negligence. The state-created danger doctrine requires more, however, and the facts here simply do not fit. At bottom, Gorsline cannot allege a constitutional violation, and even if she could, the unlawfulness of Randall's conduct was not "clearly established." I would therefore reverse and vacate the district court's order and find that Randall is entitled to qualified immunity. By granting Gorsline leave to amend to file a third amended complaint, the majority turns a blind eye to the doctrinal infirmities baked into Gorsline's complaint. I respectfully dissent.