**Ashley STANWOOD, Plaintiff,**

v.

**MARY KAY, INC., Defendant.**

**Case No. SACV 12–00312–CJC(ANx).**

United States District Court,
C.D. California,
Southern Division.

Sept. 20, 2012.

Order Denying Reconsideration
Nov. 13, 2012.

Damon Rogers, Filippo Marchino, The X–Law Group PC, Los Angeles, CA, Michael J. Avenatti, Scott Howard Sims, Eagan Avenatti LLP, Newport Beach, CA, for Plaintiff.

Bradley Joseph Hamburger, James L. Zelenay, Jr., Gibson Dunn & Crutcher LLP, Los Angeles, CA, Michael Sean Royall, Gibson Dunn and Crutcher LLP, Dallas, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART AND DENYING DEFENDANT'S MOTION TO STRIKE

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION AND BACKGROUND

On February 28, 2012, Plaintiff Ashley Stanwood, along with other individuals (collectively, "Plaintiffs"), brought a nationwide putative class action against three cosmetic companies, Mary Kay, Inc. ("Mary Kay"), The Estee Lauder Companies, Inc. and Estee Lauder, Inc. (together, "Estee Lauder"), and Avon Products, Inc. ("Avon") (collectively, "Defendants"). Plaintiffs allege that Defendants defrauded American consumers by marketing and advertising that they did not test any of their products on animals. In reality, Defendants were testing products sold in foreign markets on animals, often as required by law in those countries. Plaintiffs allege that they purchased Defendants' products based on the representations that Defendants did not test *any* of their products on animals, regardless of where those products were sold. Had they known the truth about Defendants' operations, Plaintiffs allege that they would not have purchased the products.

On March 22, 2012, Plaintiffs voluntarily dismissed Avon without prejudice. (Dkt. No. 15.) On April 16, 2012, Plaintiffs filed their First Amended Complaint ("FAC") against Mary Kay and Estee Lauder.

(Dkt. No. 32.) On May 14, 2012, Mary Kay moved to dismiss the FAC or, in the alternative, to dismiss or strike the class allegations. (Dkt. No. 35.) On the same date, Estee Lauder moved to dismiss the FAC or, in the alternative to strike Plaintiffs' requests for restitution and punitive damages. (Dkt. No. 36.) On June 28, 2012, the Court granted both motions to dismiss, and severed the claims against Mary Kay and Estee Lauder. (Dkt. No. 44.) On July 18, 2012, Ms. Stanwood filed her operative Second Amended Complaint ("SAC") against Mary Kay. (Dkt. No. 45.) Before the Court is Mary Kay's motion to dismiss the SAC or strike Ms. Stanwood's class claims.

In her SAC, Ms. Stanwood alleges that Mary Kay engaged in a long-term marketing and advertising campaign touting itself as a company that did not test its products on animals. (SAC ¶ 1.) While it was making such representations to American consumers, Mary Kay decided to enter the Chinese market, where it was required by Chinese law to test certain products on animals. (*Id.* ¶ 14.) Specifically, she alleges that Mary Kay represented to the People for the Ethical Treatment of Animals ("PETA") and the Coalition for Consumer Information of Cosmetics (the "Coalition") that it did not and would not test any of its products on animals. (*Id.* ¶ 8.) As a result, Mary Kay was placed on PETA's "Do Not Test" list and the Coalition's "Leaping Bunny" list of companies that do not conduct animal testing. (*Id.*) In addition to making such representations to PETA and the Coalition, Ms. Stanwood alleges that Mary Kay placed a statement on its website that "Mary Kay does not conduct animal testing for its products and is a PETA pledge member." (*Id.*) Mary

Kay also allegedly represented to its sales force that Mary Kay did not test any of its products on animals, with full knowledge that the sales force would repeat these representations to consumers. (*Id.*) Finally, Ms. Stanwood alleges that in September 2011, a Mary Kay representative named Jacqueline represented to her, as part of a sale, that Mary Kay did not test *any* of its products on animals. (*Id.* ¶ 5.) Ms. Stanwood alleges that Mary Kay profited millions of dollars from U.S. consumers who would not have purchased any products from a company that tested its products on animals. (*Id.* ¶ 13.) Ms. Stanwood, individually and on behalf of others similarly situated, asserts four claims against Mary Kay for: (1) fraud/fraudulent concealment, (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., and (4) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq. Ms. Stanwood requests injunctive relief, compensatory damages, punitive damages, and restitution. For the following reasons, the Court **GRANTS IN PART** Mary Kay's motion to dismiss. Because the Court cannot say with certainty at this time whether any further amendment would be futile, those claims which are dismissed are done so **WITH LEAVE TO AMEND.** Mary Kay's motion to strike class allegations is **DENIED WITHOUT PREJUDICE.**[1]

## II. ANALYSIS

### A. Standing

■ Mary Kay argues that Ms. Stanwood lacks standing under Article III, the

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–

15. Accordingly, the hearing set for September 24, 2012, at 1:30 p.m. is hereby vacated and off calendar.

UCL, FAL, and CLRA because she has not suffered an actual injury. Under Article III, federal courts may only hear a "case or controversy." U.S. Const. art. III, § 2, cl. 1. To satisfy this standard, the plaintiff must show an injury in fact that is fairly traceable to the defendant's unlawful conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.2004). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Stickrath v. Globalstar, Inc.*, 527 F.Supp.2d 992, 995 (N.D.Cal.2007) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130) (quotes omitted).

■ The UCL, FAL, and CLRA have independent requirements for standing. After the passage of Proposition 64 in 2004, a plaintiff asserting a UCL or FAL claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011) (alterations in original). In addition, the CLRA requires that a person have suffered "damages as the result of" a violation of the statute. Cal. Civ. Code § 1780(a).

■ Ms. Stanwood has pleaded a sufficient injury under Article III, the UCL, the FAL, and the CLRA. Mary Kay incorrectly frames the standing issue as whether "American purchasers of Mary Kay products have standing to pursue claims premised on Mary Kay's alleged conduct related to products they did not purchase and that were sold only in foreign countries." (Dkt. No. 52, at 1.) Because Mary Kay mischaracterizes the issue, the cases Mary Kay relies on in support of its argument against standing are irrelevant here. Those cases would only be relevant if Ms. Stanwood was seeking redress for an injury related to some defect in the products. She is not. Ms. Stanwood does not allege that she was, in any way, injured by using animal-tested products. Rather, she was injured because Mary Kay made false representations and omissions about its operations, which induced her to buy a non-defective product she otherwise would not have purchased. The real question before the Court is whether purchasing a non-defective product based on fraudulent misrepresentations can constitute a sufficient injury for standing purposes.

The California Supreme Court recently answered this question in the affirmative. *See Kwikset*, 51 Cal.4th at 330, 120 Cal. Rptr.3d 741, 246 P.3d 877. In *Kwikset*, a consumer brought claims against a company for falsely marketing and selling locksets labeled "Made in the U.S.A." that actually contained foreign-made parts or involved foreign manufacture. The plaintiff argued that he suffered an injury because, but for the false representations on the label, he would not have bought the product. *Id.* at 327–28, 120 Cal.Rptr.3d 741, 246 P.3d 877. He did not allege that the lockset was defective in any way, or that it was somehow inferior because it was partially manufactured overseas. *Id.* at 331, 120 Cal.Rptr.3d 741, 246 P.3d 877. The California Supreme Court held that the plaintiff had standing to pursue his claims. *Id.* at 328, 120 Cal.Rptr.3d 741, 246 P.3d 877. The California Supreme Court noted that "to some consumers, the 'Made in U.S.A.' label matters. A range of motivations may fuel this preference, from the desire to support domestic jobs, to beliefs about quality, to concerns about overseas environmental or labor conditions, to simple patriotism." *Id.* at 329,

120 Cal.Rptr.3d 741, 246 P.3d 877. The California Supreme Court held that consumers that relied on the label and were deceived by the misrepresentation into making a purchase suffered an injury in fact: "[T]he consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Id.* (emphasis in original). The harm was not that the product was somehow inferiorly made, but simply that the consumer would not have purchased it at the price he paid, but for the misrepresentations.

Like the *Kwikset* plaintiff, Ms. Stanwood does not allege that the Mary Kay products she purchased were in any way defective or inferior based on the fact that Mary Kay tests some foreign products on animals. She argues that had she known the truth about Mary Kay's operations, she would not have purchased its products. From this, we know that Ms. Stanwood paid more for the products than she actually valued them. "That increment, the extra money paid, is economic injury and affords the consumer standing to sue." *Id.* at 330, 120 Cal.Rptr.3d 741, 246 P.3d 877. Ms. Stanwood alleges that she purchased a number of Mary Kay products that she otherwise would not have, including "Concealer Beige 2, Mascara Waterproof Black, Mineral Eye Colors, Compacts and Brushes, and After Sun Replenishing Gel." (SAC ¶ 5.) This is a sufficient injury for standing under the UCL, FAL, and CLRA, and under Article III.

■ Ms. Stanwood has also shown the causation required for standing. She alleges that her injuries were the result of exposure to misrepresentations in Mary Kay's advertising and by its representative. This is a sufficient causal link under Article III, and the UCL, FAL, and CLRA. However, Ms. Stanwood has not sufficiently alleged causation for her claims related to the Mary Kay website and the PETA and Coalition lists. She has not alleged that she viewed any of those sources, and therefore cannot link her injuries to those misrepresentations. Accordingly, claims reliant on exposure to the website, PETA list, and Coalition list are dismissed.

That the misrepresentations were not specifically related to the products she purchased, but instead the company's wider operations, does not negate the fact that Ms. Stanwood was allegedly induced into purchasing something she otherwise would not have. Consumers typically base their purchasing decisions on the price and quality of a product. As consumers have grown more aware of the social, environmental, and political impact of their purchasing decisions, they have tended to look to more factors, including company-wide operations, to inform their consumption choices. Consumers receive this information from a variety of sources, but one of the most direct and important remains the company itself. Companies, realizing this, have tailored their marketing to such consumers. It should not be unexpected then, that when companies make misrepresentations about their company-wide operations, they face potential liability in court to consumers who relied on those representations in purchasing their products.

This does not amount to a radical expansion of standing, or open "the courthouse doors to all manner of uninjured plaintiffs," as Mary Kay suggests: (Dkt. No. 52, at 6.) Mary Kay poses a hypothetical situation it claims could become a reality if the Court holds that Ms. Stanwood has standing: "[I]f a retailer guarantees that they have the lowest prices on every product they sell, but it turns out that a competitor actually sells one particular product for a lower price, under Stanwood's view *anyone* who purchased *any* product from

that company would have standing to sue, even if she did not purchase the specific product in question." (Dkt. No. 48, at 10.) As Ms. Stanwood points out, the plaintiff would also have to allege that, but for the misrepresentations, she would not have purchased the product, even though it had the lowest price on the market. (Dkt. No. 50, at 8 n.3.) It is difficult for the Court to imagine a real world situation where a consumer would regret paying the lowest price for a product after learning that the retailer sells other products at higher prices. The Court is certainly not worried about such cases flooding federal courts. Because Ms. Stanwood *has* alleged that but for Mary Kay's representations she would not have purchased specific Mary Kay products, she has sufficiently pleaded an injury in fact giving rise to standing.

## B. Failure to State a Claim

Mary Kay further moves to dismiss Ms. Stanwood's claims pursuant to Rule 12(b)(6) and 9(b). A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal may be based on the lack of a cognizable legal theory or on the basis of insufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir.2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The purpose of Rule 9(b) is to ensure that defendants accused of fraudulent conduct have adequate notice of the allegations so that they might defend against them. *Von Grabe v. Spring PCS*, 312 F.Supp.2d 1285, 1305 (S.D.Cal. 2003). A sufficiently particular allegation of fraud must include the "who, what, when, where and how" of the circumstances giving rise to the claim. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997).

### 1. Fraudulent Misrepresentations

In order to establish a cause of action for fraud, a plaintiff must plead and prove all elements of fraud, namely: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Von Grabe*, 312 F.Supp.2d at 1305. Ms. Stanwood has not alleged particularized facts to support her fraud-based claims under Rule 9(b)'s heightened pleading standard.

Ms. Stanwood's claims are based on several alleged misrepresentations. The first is that she was "exposed" to Mary Kay's "extensive and long term marketing and advertising campaign touting the company and its business operations as not testing *any* of its products on animals." (SAC ¶ 5.) Under Rule 9(b), it is not sufficient to simply allege exposure to a long-term advertising campaign. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

Cir.2009). While it may be true that for purposes of standing a plaintiff need not plead with an unrealistic degree of specificity that she relied on particular advertisements, *see In re Tobacco II Cases*, 46 Cal.4th 298, 306, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009), that issue is separate from whether Rule 9(b)'s requirements are met. Therefore, Ms. Stanwood's claims for fraud based on her exposure to Mary Kay's advertising campaign must adequately plead the "who, what, when, where, and how" of the underlying misrepresentations, which she has failed to do.

In *Kearns*, the plaintiff alleged that Ford Motor Company fraudulently misrepresented the benefits of its certified preowned program. *Kearns*, 567 F.3d at 1122. He alleged exposure to these misrepresentations through Ford's televised national marketing campaign, sales materials found at the dealership, and sales personnel at the dealership. *Id.* at 1125–26. The Ninth Circuit affirmed the district court's order to dismiss the complaint for failure to plead the particular circumstances surrounding such representations, as required by Rule 9(b). *Id.* at 1126. The Ninth Circuit noted that the plaintiff failed to "specify what the television advertisements or other sales material specifically state. Nor did he specify when he was exposed to them or which ones he found material." *Id.*

Ms. Stanwood claims are based on similar allegations as in *Kearns*, and fail for similar reasons. She does not plead what the advertising materials specifically state. She points to no particular advertisements or promotional materials that she was personally exposed to. Finally, she does not even plead whether the advertisements were broadcast on television, on the radio, or in print ads. Thus, she has failed to meet the pleading requirements of Rule 9(b) for these claims.

Ms. Stanwood also alleges that she relied on the misrepresentations of a Mary Kay representative named Jacqueline in deciding to purchase Mary Kay products. (SAC ¶ 5.) She alleges that, in September 2011, Jacqueline represented, as part of a purchase, that Mary Kay did not test *any* of its products on animals. (*Id.*) Ms. Stanwood alleges that she relied on this representation, and had she known that it was not true, would not have purchased the products. (*Id.*)

■■■■ These allegations fail to adequately plead the "who, what, and where" required by Rule 9(b). Ms. Stanwood alleges that Jacqueline is a Mary Kay representative, but that description alone is inadequate. It is not clear exactly what her position is, where she works, or her relationship with Mary Kay. Ms. Stanwood has also failed to plead where the statements were made. She lists a phone number for Jacqueline, but does not specify whether the conversation took place over the phone or in person. Ms. Stanwood has also failed to adequately plead the contents of their conversation. It is not sufficient to state the conclusion that Jacqueline made certain representations. She must also plead what the specific comments were that formed the basis of the representation. Finally, though Ms. Stanwood lists a number of Mary Kay products she has generally purchased, she does not specify which products she purchased in reliance on Jacqueline's representations. (*Id.* ¶ 5.) For these reasons, the claims are insufficient under Rule 9(b).

### 2. Fraudulent Concealment

■■■■ Under California law, to establish a fraud-by-concealment claim, "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose

the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Lovejoy v. AT & T Corp.*, 92 Cal.App.4th 85, 96, 111 Cal. Rptr.2d 711 (2001) (citation omitted). A defendant generally has a duty to disclose: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D.Cal.2007) (quotes and citations omitted). For a fact to be material, "a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk*, 496 F.Supp.2d 1088, 1095 (N.D.Cal.2007).

Mary Kay argues that the disclosures do not concern safety issues, and therefore do not give rise to a duty to disclose under *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136 (9th Cir.2012). In *Wilson*, a product defect case, the Ninth Circuit stated that California federal courts have generally held that "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Id.* at 1141. The Ninth Circuit acknowledged that its requirement of a safety issue does not necessarily apply outside the products defect context where warranty protections are not available. *Id.* at 1142 (listing cases where a safety issue was not required to trigger a duty to disclose). One reason why the duty to disclose in product defect

cases is narrower than in other areas is that warranty law essentially covers the same terrain. There is less of a need, then, for common law fraud to protect consumers. Here, there are no warranty issues present. The Court therefore finds the more general rule, that a fact need only be material to trigger a duty to disclose, the appropriate standard.

Ms. Stanwood alleges that Mary Kay had a duty to disclose information about its animal testing because it is a material fact. (SAC ¶ 12.) The information is material because, had she known about the animal testing practices, she would have acted differently by not purchasing Mary Kay products. This is sufficient to give rise to a duty to disclose. Ms. Stanwood has adequately pleaded the other elements of a fraudulent concealment claim, including that she was unaware of Mary Kay's animal testing practices, Mary Kay concealed the information in order to increase its sales from consumers like Ms. Stanwood, and as a result of Mary Kay's concealment, she purchased products she otherwise would not have. Therefore, she has adequately pleaded a claim for fraudulent concealment.

Mary Kay's misrepresentations through its general advertising campaign and by its representative Jacqueline could also potentially give rise to a duty to disclose. However, as discussed previously, Ms. Stanwood has not adequately pleaded what those misrepresentations were under Rule 9(b). Rule 9(b) applies to fraudulent concealment claims as well, and without more specifics regarding the misrepresentations, they cannot form the basis of a concealment claim.

### 3. UCL, FAL, and CLRA Claims

Ms. Stanwood additionally brings claims under the UCL, FAL, and CLRA. Where "the entire complaint against a par-

ticular defendant alleges a unified course of fraudulent conduct, it is 'grounded in fraud,' and Rule 9(b) applies to the whole of that complaint." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1108 (9th Cir. 2003); *Kearns,* 567 F.3d at 1122. "If insufficiently pled averments of fraud are disregarded, as they must be, in a complaint or claim grounded in fraud, there is effectively nothing left of the complaint." *Vess,* 317 F.3d at 1107.

Ms. Stanwood's entire complaint, including her UCL, FAL, and CLRA claims, are grounded in fraud. They are based on the same "unified course of fraudulent conduct," namely that Mary Kay made fraudulent misrepresentations or omissions about its practice of testing on animals. Therefore, Ms. Stanwood must "state with particularity the circumstances constituting fraud" for all of these claims, including those alleging "unfairness" under the UCL. *Kearns,* 567 F.3d at 1127 (dismissing claims under the unfairness prong of the UCL for failure to plead with particularity under 9(b) where such claims were based on a "unified course of fraudulent conduct"). The Court has already held that Ms. Stanwood failed to plead with particularity the circumstances constituting her fraudulent misrepresentation claims, and fraudulent concealment claims related to Mary Kay's general advertising campaign. To the extent that her UCL, FAL, and CLRA claims are derivative of those claims, they are dismissed.

### a. UCL and FAL

 The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlawful," "unfair," or "fraudulent" prong. *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir.2007). The FAL prohibits "untrue or misleading" statements in connection with the sale of property, when those statements are known or should be known to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

 Ms. Stanwood has sufficiently pleaded a violation of the UCL based on her fraudulent concealment claims. Her allegations of concealment constitute an unfair, fraudulent, and unlawful business practice under the UCL. Ms. Stanwood has sufficiently pleaded a claim under the "unlawful" prong, because she already pleaded sufficient facts that Mary Kay's concealment of material facts was illegal. To state a claim under the "fraud" prong, a plaintiff must allege that "members of the public are likely to be deceived." *Tobacco II,* 46 Cal.4th at 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (citations and quotes omitted). This is a question of fact, and the Court cannot say at this time, as a matter of law, that members of the public are not likely to be deceived by the concealment. Likewise, though courts are split as to the requirements under the "unfair" prong, the determination is generally factual. Again, the Court cannot say at this time, as a matter of law, that the practice was not "unfair."

 However, Ms. Stanwood has not adequately pleaded a violation of the FAL. The FAL requires an untrue or misleading statement. Ms. Stanwood's surviving concealment claims are based on omissions, not misleading statements or partial representations. Because she has not adequately alleged that Mary Kay made any actual misleading or untrue statements, she cannot make out a claim under the FAL.

### b. CLRA

 The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices." This includes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

quantities which they do not have." Cal. Civ. Code § 1770(a)(5). Though the language of the CLRA seems to require an actual misrepresentation, omissions are actionable under the CLRA if they are "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006). As discussed previously, Mary Kay has a duty to disclose material information. In order for non-disclosed information to be material, a plaintiff must show that "had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk,* 496 F.Supp.2d at 1095 (citing *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093, 23 Cal. Rptr.2d 101, 858 P.2d 568 (1993)). "Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.' " *Id.* (citing *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal.App.4th 1351, 8 Cal.Rptr.3d 22 (2003)).

 Mary Kay's animal testing practices are material for purposes of the CLRA. In support of this point, Ms. Stanwood cites a 2011 survey conducted by the Physician's Committee for Responsible Medicine ("PCRM") finding that 72 percent of respondents agreed that testing cosmetics on animals is inhumane or unethical and 61 percent believe that companies should not be allowed to test products on animals. (SAC ¶ 17.) The actual effect on a reasonable consumer is a question of fact, but the PCRM study shows that Ms. Stanwood's allegations are not completely without support. This is a sufficient allegation that a reasonable consumer would behave differently had she been aware of Mary Kay's animal testing practices.

Therefore, Ms. Stanwood has sufficiently pleaded a claim under the CLRA based on Mary Kay not disclosing material facts related to its animal testing.

### C. Motion to Strike

Because the Court has dismissed Ms. Stanwood's SAC in part with leave to amend, Mary Kay's motion to strike class allegations is **DENIED WITHOUT PREJUDICE.**

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Mary Kay's motion to dismiss. Ms. Stanwood shall have twenty (20) days from the date of this order to file an amended complaint consistent with the Court's ruling, and Mary Kay shall have (20) days thereafter to respond. Mary Kay's motion to strike class allegations is **DENIED WITHOUT PREJUDICE.**

### ORDER DENYING DEFENDANT'S MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL OR RECONSIDERATION

### I. INTRODUCTION AND BACKGROUND

Currently before the Court is Defendant Mary Kay Inc.'s ("Mary Kay") motion for certification of the Court's September 20, 2012 order (the "Order") for interlocutory appeal, or in the alternative, for reconsideration of the Order. Mary Kay also moves to stay the proceedings pending interlocutory appeal. For the reasons provided below, the Court **DENIES** Mary Kay's motion in its entirety.[1]

---

1. Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed.R.Civ.P. 78; Local Rule 7–

15. Accordingly, the hearing set for November 19, 2012 at 1:30 p.m. is hereby vacated and off calendar.

On February 28, 2012, Plaintiff Ashley Stanwood brought a nationwide putative class action against Mary Kay. On July 18, 2012, Ms. Stanwood filed her operative Second Amended Complaint ("SAC") alleging that Mary Kay defrauded American consumers by failing to disclose that it conducts testing on animals for some products sold in foreign markets. (Dkt. No. 45.) Ms. Stanwood alleges that Mary Kay had a duty to disclose its animal testing practices, and had she known about such practices, she would not have purchased any Mary Kay products. Ms. Stanwood, individually and on behalf of others similarly situated, asserts four causes of action against Mary Kay: (1) fraud, (2) violation of California's Unfair Competition Law ("UCL"), (3) violation of California's False Advertising Law ("FAL"), and (4) violation of the California Consumers Legal Remedies Act ("CLRA").

On August 8, 2012, Mary Kay moved to dismiss the SAC for lack of standing and failure to state a claim, and to strike the class action allegations. (Dkt. No. 48.) On September 20, 2012, the Court granted in part Mary Kay's motion to dismiss and denied its motion to strike. (Dkt. No. 53.) In the Order, the Court found that Ms. Stanwood has standing under Article III, the UCL, the FAL, and the CLRA. The Court also found that Ms. Stanwood adequately pleaded a cause of action for fraudulent concealment. In reaching this conclusion, the Court held that Ms. Stanwood adequately pleaded that Mary Kay had an affirmative duty to disclose information related to its corporate practice of animal testing. However, the Court dismissed Ms. Stanwood's fraudulent misrepresentation claims for failure to state a claim with the particularity required under Federal Rule of Civil Procedure 9(b). The Court further dismissed Ms. Stanwood's UCL, FAL, and CLRA claims premised on the allegedly fraudulent misrepresentations.

## II. CERTIFICATION FOR INTERLOCUTORY APPEAL

■ Mary Kay requests certification for interlocutory appeal of two issues decided in the Order: (1) whether a manufacturer ever has an affirmative duty to disclose to a consumer non-safety related material facts related to its corporate practices or operations and (2) whether purchasing a non-defective product based on fraudulent omissions can constitute a sufficient injury to confer Article III standing. The standard for interlocutory appeals from the district courts is set forth in 28 U.S.C. § 1292(b), which permits a district court to certify an order for immediate appeal where "such order involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir.1982). The mere fact that a party strongly disagrees with a court's ruling is not a substantial ground for difference of opinion warranting certification. *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08–04078, 2011 WL 940218, *2 (N.D.Cal. Feb. 18, 2011) (citing *Mateo v. M/S Kiso*, 805 F.Supp. 792, 800 (N.D.Cal. 1992), *abrogated on other grounds by Brockmeyer v. May*, 361 F.3d 1222, 1226–27 (9th Cir.2004)). Here, there is not substantial ground for difference of opinion on either of the issues raised by Mary Kay.

Mary Kay primarily relies on three cases to show a substantial ground for difference of opinion on the issue of whether Ms. Stanwood sufficiently pleaded that Mary Kay had a duty to disclose its animal testing practices. In the Order, the Court discussed in detail, yet ultimately declined to apply, the first case, *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136 (9th Cir.2012).

Mary Kay argues that *Wilson* holds that in any circumstance, absent warranty obligations or an affirmative misrepresentation, a manufacturer only has a duty to disclose safety issues. The Court distinguished *Wilson* by noting that the Ninth Circuit's requirement of a safety issue to give rise to a duty to disclose generally only applies in product defect cases. (Order at 11–12.) The rationale behind this is that "warranty law essential covers the same terrain [as the common law duty to disclose]. There is less of a need, then, for common law fraud to protect consumers" in product defect cases. (*Id.* at 12.) As the Court discussed in the Order, Ms. Stanwood does not allege that Mary Kay's products were defective. Instead, she alleges that Mary Kay fraudulently concealed material information related to its general corporate operations, which had no effect on the products she personally purchased. Because warranty law does not apply in this case, it does not make sense to apply the *Wilson* rule requiring a safety issue to trigger a duty to disclose.

Mary Kay points to two additional federal district court cases to argue that *Wilson* is not necessarily limited to product defect cases. Though the cases do not involve product defect claims, they are not inconsistent with the Court's interpretation of *Wilson*. Unlike the case at hand, both cases involved claims related to characteristics and performance of products purchased by consumers. For instance, in *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08–1690 PSG JCX, 2012 WL 313703 (C.D.Cal. Jan. 23, 2012), the court held that a car manufacturer did not have a duty to disclose that fuel mileage estimates published by the Environmental Protection Agency differed from its own internal fuel efficiency tests. 2012 WL 313703 at *1. Similarly, in *O'Shea v. Epson Am., Inc.*, No. CV 09–8063 PSG CWX, 2011 WL 3299936 (C.D.Cal. July 29, 2011), the court held that a manufacturer did not have a duty to disclose that its printers wasted more ink than similar printers manufactured by its competitors. 2011 WL 3299936 at *2. While neither case is strictly a product defects case, the claims were rooted in problems with the products themselves. Such concerns could conceivably have been covered by warranties. Here, the information Mary Kay allegedly had a duty to disclose is entirely unrelated to the characteristics or performance of the products Ms. Stanwood purchased, and therefore, falls outside the scope of warranty protections.

Mary Kay's public policy arguments are likewise not persuasive to show a substantial ground for difference of opinion. California courts generally do not restrict required disclosures to safety issues, yet California has not seen the sort of avalanche of disclosures that Mary Kay fears will result if the Court does not extend *Wilson* to this case. In its reply brief, Mary Kay argues that the Order actually amounts to an expansion of California law because the Court did not require Ms. Stanwood to satisfy all of the requirements under *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D.Cal.2007). (Dkt. No. 63 [Reply Mem.], at 8.) Specifically, it argues that the Court did not address whether Ms. Stanwood adequately alleged that the concealed information was within Mary Kay's exclusive knowledge. (*Id.*) Though the Court did not explicitly discuss this issue, it did not mean to imply that the requirement does not apply to Ms. Stanwood. For the sake of clarity, the Court finds that Ms. Stanwood has adequately pleaded that Mary Kay "had exclusive knowledge of material facts not known to the plaintiff ...." *Falk*, 496 F.Supp.2d at 1095. The SAC alleges that Mary Kay "had exclusive knowledge of a material fact (i.e. that the company's business operations included animal testing) not known or reasonably accessible to

Plaintiff and the Class...." (SAC ¶ 12.) Mary Kay argues that such allegations are conclusory, and therefore insufficient. However, the SAC contains factual support for this claim. Specifically, the SAC alleges that PETA and the Coalition for Consumer Information on Cosmetics included Mary Kay on a list of companies that did not test on animals, which was later corrected. Moreover, it is reasonable to infer from the very nature of the allegedly concealed information—information related to Mary Kay's corporate practices—that such information was within Mary Kay's exclusive knowledge.

■■■ On the issue of standing, Mary Kay argues that there is substantial ground for difference of opinion as to whether the reasoning in *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal. Rptr.3d 741, 246 P.3d 877 (2011), a California Supreme Court case which the Court discussed in detail in the Order, is relevant to the question of Article III standing and applies to allegations of fraudulent omissions. While the Court is not obligated to follow the California Supreme Court in determining the issue of Article III standing, the Court found the California Supreme Court's reasoning relevant to its analysis. Mary Kay has pointed to no federal case that contradicts the holding, or questions the reasoning in *Kwikset*. Similarly, Mary Kay has pointed to no cases suggesting that the reasoning in *Kwikset* is limited to misrepresentations. The fact that Mary Kay disagrees with the Court's approval and application of the California Supreme Court's reasoning is not a substantial ground for difference of opinion warranting certification under 29 U.S.C. § 1292(b).

The other cases Mary Kay cites are irrelevant here, and therefore, do not show a substantial ground for a difference of opinion on the standing issue. For instance, Mary Kay relies on Justice Stevens' concurring opinion in *Nike, Inc. v. Kasky*, 539 U.S. 654, 123 S.Ct. 2554, 156 L.Ed.2d 580 (2003), for the proposition that a plaintiff lacks "Article III standing to challenge general corporate practices when he did not purchase the product affected by those practices." (Def.'s Mem. at 20.) Unlike Ms. Stanwood, the *Nike* plaintiff did not allege he suffered *any* personal injury. Rather, as Justice Stevens noted, the plaintiff was "proceeding as a private attorney general seeking to enforce two California statutes on behalf of the general public of the State of California." *Nike*, 539 U.S. at 656, 123 S.Ct. 2554. That is not the case here, where Ms. Stanwood alleges that she suffered a concrete personal injury. Moreover, the other cases Mary Kay cites are only relevant in the context of product defect cases. As the Court has noted several times, this is not a product defect case, and the reasoning in those cases is not relevant here on the standing issue.

### III. MOTION FOR RECONSIDERATION

In the alternative to certification for appeal, Mary Kay requests that the Court reconsider its Order. More specifically, it asks that the Court reconsider its decision in light of the holdings in *Wilson*, *O'Shea*, and *Kwikset*, which it argues show clear error in the Court's Order. (Def.'s Mem. at 24.) The standard for a motion for reconsideration is set by Local Rule 7–18, which provides that "a motion for reconsideration may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of

a failure to consider material facts presented to the Court before such decision." "No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*; *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000).

The Court has considered and rejected Mary Kay's arguments related to *Wilson*, *O'Shea*, and *Kwikset*, both in the Order and as discussed above. Mary Kay has provided no other reasons under Local Rule 7–18 as to why the Court should reconsider its Order. Accordingly, there are no grounds for reconsideration.

## IV. CONCLUSION

For the foregoing reasons, Mary Kay's motion for certification for appeal or in the alternative reconsideration of the Court's September 20, 2012 Order is **DENIED.**